# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Bryan Dryden,

           Petitioner

   v.

Brian E. Williams, *et al.*,

           Respondents

Case No. 2:17-cv-00704-JAD-NJK

**Order Granting in Part Motion to Dismiss**

ECF No. 22

Bryan Dryden brings this first amended petition for federal habeas corpus relief under 28 U.S.C. § 2254 to challenge his 2011 state-court conviction for second-degree murder.[1] Respondents move to dismiss two of Dryden's grounds as unexhausted.[2] I find that respondents have shown that Dryden's ineffective-assistance-of-trial-counsel claim in ground C is unexhausted, so I grant the motion in part and give Dryden until January 23, 2020, to notify the court how he wishes to proceed with this mixed petition.

## Background

Patrick Kelly died of strangulation and blunt-force injuries on June 22, 2009. While the attack on Kelly occurred, Nicholas Halstead was driving by and called 911. Dryden was arrested and charged with Kelly's murder, and Halstead testified at the preliminary hearing.[3] Dryden

---

[1] ECF No. 15.

[2] ECF No. 22.

[3] The court does not have the complete preliminary hearing transcript. Halstead testified on August 5, 2009. ECF No. 15 at 13. What is listed as the preliminary hearing transcript actually is the continuation of the hearing on September 21, 2009. ECF No. 23-1. Although the details of Halstead's testimony are not important for this order, respondents will need to file the remaining parts of the preliminary hearing transcript.

later agreed to plead guilty to second-degree murder[4] but then tried to withdraw his plea. At the hearing on the plea-withdrawal motion, counsel stated that she had thought that Dryden was staying current with his mental-health medications, but later learned that he was not. Dryden had resumed the medications on the day he agreed to plead guilty, and Dryden said that the resumption of medication left him feeling overwhelmed.[5] The state district court denied Dryden's motion,[6] convicted Dryden based on his plea, and sentenced him to 10 years to life in prison.[7] Dryden appealed, and the Nevada Supreme Court affirmed.[8]

Dryden then filed a counseled post-conviction habeas corpus petition in the state district court.[9] The state district court held an evidentiary hearing.[10] Dryden then filed a post-hearing written argument.[11] The state district court denied the petition.[12] Dryden appealed. He filed a counseled opening brief[13] and a counseled reply brief.[14] Dryden was dissatisfied with counsel's representation on appeal. The Nevada Supreme Court granted Dryden's request to discharge

---

[4] ECF No. 24-28.
[5] ECF No. 25-6 at 3–4.
[6] *Id.* at 10.
[7] ECF No. 25-10.
[8] ECF No. 25-28.
[9] ECF No. 25-48.
[10] ECF No. 26-18 and 26-19.
[11] ECF No. 26-27.
[12] ECF No. 26-34.
[13] ECF No. 27-20.
[14] ECF No. 27-25.

counsel and to proceed *pro se*.[15] Dryden filed a proper-person brief.[16] The Nevada Supreme Court transferred the case to the Nevada Court of Appeals, which affirmed.[17]

Dryden filed a *pro se* federal petition on March 8, 2017, and a counseled amended one in June 2018.[18] He asserts three grounds (A-C). Respondents now move to dismiss grounds A and C as unexhausted.[19] Petitioner opposes that motion.[20]

## Discussion

Because a habeas petitioner must give the state courts a fair opportunity to act on each of his claims before he presents them in a federal habeas petition, the federal court will not consider a state prisoner's petition for habeas relief until he has properly exhausted his available state remedies for all claims raised.[21] A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral-review proceedings.[22] To properly exhaust state remedies on each claim, the habeas petitioner must "present the state courts with the same claim he urges upon the federal court."[23] The federal constitutional implications of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion.[24] The state court must be "alerted to the fact that

---

[15] ECF No. 27-30.
[16] ECF No. 27-35.
[17] ECF No. 27-44.
[18] ECF Nos. 1-1, 15.
[19] ECF No. 22.
[20] ECF No. 32.
[21] *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).
[22] *See Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).
[23] *Picard v. Connor*, 404 U.S. 270, 276 (1971).
[24] *Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404 U.S. at 276)).

the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights.[25] "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion,"[26] but citing to state case law that applies federal constitutional principles will suffice.[27]

The factual basis for a claim also matters. A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based.[28] Exhaustion does not occur when the petitioner presents to the federal court facts or evidence that place the claim in a significantly different posture than it was in the state courts, or when different facts are presented at the federal level to support the same theory.[29]

**A.     Respondents have not demonstrated that Ground A is unexhausted.**

In ground A, Dryden contends that his plea was not knowing, intelligent, or voluntary. Dryden presented this claim in his plea-withdrawal motion in the state district court. Respondents argue that this ground is not exhausted because Dryden now cites to jail medical records showing that he had not been taking his mental-health medications, and he did not cite to

---

[25] *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

[26] *Hiivala*, 195 F.3d at 1106.

[27] *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

[28] *Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994).

[29] *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982); *Johnstone v. Wolff*, 582 F. Supp. 455, 458 (D. Nev. 1984).

4

those records in his plea-withdrawal motion.[30] In the evidentiary hearing on the post-conviction habeas corpus petition, these records were admitted into evidence as exhibits A and B.[31] However, Dryden did not raise the claim of the validity of his plea in the post-conviction proceedings. Respondents argue that these records fundamentally alter ground A from what Dryden presented to the state courts, making ground A unexhausted.[32]

I reject respondents' argument because I cannot evaluate it. Respondents have the burden of proving a failure to exhaust state-court remedies. And both Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and Local Rule LSR 3-3(a) require respondents to file the relevant exhibits. Nobody has cited to these jail records in a way that I can find them. The index of exhibits does not list them. The records were admitted as exhibits in the state evidentiary hearing, but they are not attached to the transcript of the hearing. Consequently, respondents have failed to demonstrate that ground A is unexhausted.[33]

**B.     Ground C is unexhausted.**

In ground C, Dryden claims that his trial counsel provided ineffective assistance by withholding from Dryden the transcript of a 911 call. At least two 911 calls are relevant to the case now. On June 18, 2009, somebody called 911 to report an assault on Dryden's girlfriend.[34] This is the 911 call at issue in ground C. On June 22, 2009, Halstead called 911 to report the attack on Patrick Kelly.

---

[30] In the evidentiary hearing on the post-conviction habeas corpus petition, these records were admitted into evidence. ECF No. 26-18 at 58–59. However, Dryden did not raise the claim of the validity of his plea in the post-conviction proceedings.

[31] ECF No. 26-18 at 58–59.

[32] *See Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

[33] Respondents will need to file these exhibits.

[34] ECF No. 26-27 at 21.

5

1    The 911 call at issue changed during the state-court proceedings. Dryden did not make

2 an issue of any 911 call in his initial state post-conviction petition.[35] In the evidentiary hearing,

3 trial counsel was asked whether she shared with Dryden the June 22, 2009 911 call. Counsel

4 concluded that nothing was important in that call because the caller, Halstead, testified at the

5 preliminary hearing, and Dryden was present at the preliminary hearing.[36] In the post-hearing

6 written argument, Dryden wrote:

> In addition to being factually innocent, Mr. Dryden essentially stated that he was originally without sufficient information to enter his plea because thorough pre-trial investigations about Mr. Huggins, nor the 911 call outlining the attacker and his clothing. [sic] *See Exhibit 4.* According to Mr. Dryden he did not learn of this 911 call until over a year after his Guilty Plea and that [sic] this fact would have supported additional investigation of his case and would have completely changed his original decision to plead Guilty. It is Mr. Dryden's opinion that this phone call supports the version of events of self defense/defense of others that he would have testified to at trial. However, because he was originally told by his counsel that the 911 call did not exist, he was pressured to accept a Guilty Plea because he would not be able to support his defense testimony at trial.[37]

In the context of what was discussed at the evidentiary hearing, this argument refers to the June 22, 2009, 911 call. The exhibit 4 cited in the argument is the report of the June 18, 2009, 911 call, but nothing connects it to the argument. When the state district court denied the petition, it noted that counsel was not ineffective for not sharing the June 22, 2009, 911 call with Dryden.[38]

On appeal from the denial of the post-conviction petition, Dryden wrote:

---

[35] ECF No. 25-48.

[36] ECF No. 26-18 at 65–66.

[37] ECF No. 26-27 at 6–7 (emphasis in original). Mr. Huggins was a person whom Dryden proposed was the actual attacker of Kelly.

[38] ECF No. 26-35 at 14.

6

> The District Court erred by refusing to find that Counsel was ineffective for failing to provide Appellant with a copy or assist him in listening to recordings of the 911 calls from witnesses to the crime until after he entered the Guilty Plea Agreement. Appellant contends that the information on those recordings supported his position as being the defender and not the aggressor in the altercation leading to the victim's death. Furthermore, Appellant asserts that the information contained in the recordings supported the testimony regarding Appellant's position as the defender that was presented at the Preliminary Hearing.[39]

By referring to the state district court's ruling without any reference to the June 18, 2009, 911 call, this argument could only refer to the June 22, 2009, 911 call. Then, in the reply brief, Dryden wrote:

> Despite counsel's assertions at the evidentiary hearing that she did not think there was anything worthwhile on the calls, she also admitted that the trucker had reported seeing something that was happening at the crime scene. . . . Even if the exculpatory value of the calls were to be considered miniscule, counsel still should have played the calls for Appellant upon his request in an effort to formulate his theory of defense for trial.[40]

The trucker mentioned in this argument is Halstead, and the argument refers to the June 22, 2009, 911 call. In short, up to this point, the 911 call at issue always was Halstead's call on June 22, 2009.

When the Nevada Supreme Court allowed Dryden to proceed *pro se*, the 911 call at issue changed. In his proper-person brief, Dryden stated that post-conviction counsel had been referring to the wrong 911 call. He argued for the first time that the 911 call on June 18 call was the significant one.[41] On that issue, the Nevada Court of Appeals held:

---

[39] ECF No. 27-20 at 21–22.
[40] ECF No. 27-25 at 10 (citation omitted).
[41] ECF No. 27-35 at 8–13.

7

> Dryden also argues counsel was ineffective for failing to obtain and use 911 recordings from a separate incident involving his girlfriend. He also claims these recordings demonstrate he was actually innocent. Because this claim was not raised below, we decline to consider on it appeal [sic]. *See Davis [v. State*, 817 P.2d 1169, 1173 (Nev. 1991), *overruled on other grounds by Means v. State*, 103 P.3d 25, 33 (Nev. 2004).][42]

This procedural history demonstrates that Dryden has not exhausted ground C. Up until the filing of Dryden's pro se brief with the Nevada Supreme Court, the argument about the 911 call concerned only the call or calls made on the date of Kelly's death, June 22, 2009. It is true that exhibit 4 to the written post-hearing argument is a report of the June 18th call regarding the assault on Dryden's girlfriend. However, nothing in the evidentiary hearing, the written argument, the opening brief on post-conviction appeal, and the reply brief on post-conviction appeal mentioned the attack on Dryden's girlfriend on June 18, 2009, or otherwise connected that report to the arguments actually presented to the state courts. A loose exhibit with no explanation of its significance is not a fair presentation of a claim to the state courts. Although Dryden did explicitly argue the significance of the June 18, 2009 call in his *pro se* brief, the Nevada Court of Appeals noted, correctly, that that was the first time he had raised the issue and that he had not raised it in the state district court. "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special

---

[42] ECF No. 27-44 at 5 n.3.

circumstances does not constitute fair presentation."[43] Because Dryden presented the claim in ground C to the appellate courts in a procedurally incorrect manner, ground C is not exhausted.[44]

**C.  Because this is a mixed petition, Dryden must advise the court how he wants to proceed.**

Because this petition is a mixed one, containing both exhausted and unexhausted claims, Dryden must now choose one of three paths forward and advise the court how he will proceed:

1.   He can submit a sworn declaration advising the court that he is voluntarily abandoning his unexhausted claims and will proceed on the exhausted claims only;

2.   He can submit a sworn declaration advising the court that he will return to state court to exhaust his unexhausted claims, in which case his federal habeas petition will be denied without prejudice; or

3.   He can file a motion asking the court to hold his exhausted claims in abeyance while he returns to state court to exhaust his unexhausted claims.[45]

Dryden is cautioned that a stay and abeyance (option 3) is available only in limited circumstances and only if he shows good cause for his failure to first exhaust his unexhausted

---

[43] *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Dryden's citation to *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999), is inapposite. *O'Sullivan* required petitioners in states with a discretionary level of appeal to file a petition for discretionary review to exhaust a claim. *Id.* at 848. That procedure does not exist in Nevada. *O'Sullivan* says nothing about a petitioner who presents a claim to the state courts in a procedurally incorrect manner, which is what happened in Dryden's case.

[44] Respondents also argued that ground C was not exhausted because Dryden never presented the issue of the June 18, 2009, 911 call. ECF No. 22 at 6. That argument overlooked the authorized proper-person brief on the post-conviction appeal. Respondents appear to have dropped the argument in their reply. *See* ECF No. 35.

[45] *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269 (2005); *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2002); *King v. Ryan*, 564 F.3d 1133 (9th Cir. 2009).

9

claims in state court and that those claims are not plainly meritless.[46] Respondents would then have a chance to respond to his motion. If Dryden fails to choose one of these three options or seek other appropriate relief by January 23, 2020, his federal habeas petition will be dismissed without prejudice as a mixed petition.

**Conclusion**

IT IS THEREFORE ORDERED that respondent's motion to dismiss **[ECF No. 22] is GRANTED in part:** Ground C of the first amended petition (ECF No. 15) is unexhausted.

IT IS FURTHER ORDERED that **petitioner has until January 23, 2020, to do one of the following:**

(1) Inform this court in a sworn declaration that he wishes to formally and forever **abandon the unexhausted grounds** for relief in his federal habeas petition and proceed on the exhausted grounds;

(2) Inform this court in a sworn declaration that he wishes to dismiss this petition without prejudice in order to **return to state court to exhaust** his unexhausted claims; **or**

(3) **File a motion for a stay** and abeyance, asking this court to hold his exhausted claims in abeyance while he returns to state court to exhaust his unexhausted claims.

**If petitioner does none of these things within the allotted time, this case may be dismissed without further prior notice.**

---

[46] *Rhines*, 544 U.S. at 277 (stating that "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. [And] even if a petitioner [shows good cause], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

IT IS FURTHER ORDERED that if petitioner chooses to file a motion for a stay and abeyance or seek other appropriate relief, respondents may respond to his motion as provided in Local Rule 7-2. If he elects to abandon his unexhausted grounds, respondents will have 30 days from the date petitioner serves his declaration of abandonment to file an answer to petitioner's remaining grounds for relief. The answer must contain all substantive and procedural arguments for all surviving grounds of the petition and comply with Rule 5 of the Rules Governing Proceedings in the United States District Courts under 28 U.S.C. §2254. Petitioner will then have 30 days after service of respondents' answer to file his reply.

IT IS FURTHER ORDERED that **respondents have until January 23, 2020, to file the transcripts of the preliminary hearing** that are not already in the docket.

IT IS FURTHER ORDERED that **respondents have until January 23, 2020, to file the certified copies of incident notes and the Clark County Detention Center certified medical records**, identified respectively as Exhibits A and B of the state-court evidentiary hearing.

Dated: December 23, 2019

_____
U.S. District Judge Jennifer A. Dorsey